IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO:  6:09-CV-2050-Orl-19DAB

SEOUL BROADCASTING SYSTEM
INTERNATIONAL, INC.,

      Plaintiff,

vs.

LADIES PROFESSIONAL GOLF
ASSOCIATION and IMG WORLD, INC.,

      Defendants.

_____/

## MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant, Ladies Professional Golf Association ("LPGA"), pursuant to Rules 8(a)(2), 9(b), and 12(b)(6), Federal Rules of Civil Procedure, moves to dismiss Plaintiff, Seoul Broadcasting System International, Inc.'s ("SBS") First Amended Complaint ("Complaint") and states as follows:

### INTRODUCTION

This dispute concerns an international licensing agreement between the LPGA and SBS which granted SBS the right to broadcast LPGA tournaments on the SBS Golf Channel in South Korea ("License Agreement").  SBS's lawsuit attempts to fabricate tort and contract claims based upon a breakdown of negotiations between SBS and LPGA to renew the License Agreement.  The Complaint erroneously alleges that the LPGA somehow conferred upon SBS a binding and enforceable "right of last option" permitting SBS to match any other offer by SBS's broadcast network competitors.  But, no such right exists in any agreement between the parties.

For all of the reasons that follow, the Amended Complaint should be dismissed.

## BACKGROUND

### A.      Procedural History

On August 10, 2009, SBS filed a ten-count Complaint in the Superior Court of New Jersey, Law Division, Bergen County against LPGA and IMG Worldwide, Inc. (incorrectly designated as "IMG World, Inc.") ("IMG").  On September 23, 2009, Defendants removed the Complaint from the Superior Court of New Jersey to the U.S. District Court for the District of New Jersey based on complete diversity of citizenship and the requisite amount in controversy, and thereafter moved (i) to transfer this action to the Middle District of Florida under 28 U.S.C. §1404(a), and (ii) to dismiss certain counts for failure to state a claim.  The parties entered into a stipulation and consent order to transfer the action to this District, pursuant to which plaintiff filed an Amended Complaint (the "Complaint").

### B.      The Parties

SBS is a corporation existing under the laws of the State of New York, with its principal place of business located in Los Angeles, California.  Compl. ¶ 4.  SBS owns and operates one of three major national South Korean television networks and produces programs in the areas of drama, entertainment, sports, culture, and news for Korean audiences.  Id.

The LPGA is an Ohio non-profit corporation with its principal place of business located in Daytona Beach, Florida.  The LPGA is a women's golf association that operates a series of golf tournaments nation- and world-wide.  Id. at ¶ 5.[1]

---

[1] The Complaint erroneously alleges that LPGA is incorporated in Florida.  For purposes of this motion, the distinction is not material.

IMG is an Ohio corporation with its principal place of business in Cleveland, Ohio.  IMG is an international sports, entertainment, and media company focusing on event management and talent representation.  Id. at ¶ 6.

## C.    The License Agreement

This dispute centers around negotiations to renew the License Agreement between SBS and LPGA.  The License Agreement granted SBS a license to televise LPGA golf tournaments on the SBS Golf Channel in South Korea from January 1, 2005 to December 31, 2009 (the "Licensed Period").  Compl. Exh. A.  Under the License Agreement, SBS agreed to pay a License Fee to the LPGA in the amount of $2,250,000.00 per year during the Licensed Period.[2] The License Fee was payable in bi-annual installments due by January 15th and July 15th of each year.

Neither the terms "right of last option" nor "must have number" are included in the License Agreement.  It does not contain an automatic renewal clause.  Moreover, the License Agreement contains an integration clause, which states that the License Agreement constitutes the "full and complete understanding between the parties hereto, supersedes all prior agreements and understandings, whether written or oral, and may not be modified except by written instrument signed by the parties hereto."  Compl. Exh. A, ¶ 23.  As explained below, the integration clause defeats several of SBS's claims.

## D.    SBS's Allegations

SBS asserts numerous causes of action sounding in breach of contract and tort, most of which concern the parties' failure to negotiate a renewal of the License Agreement beyond its December 2009 termination date.  SBS bases its breach of contract claims on a supposed "right

---

[2] SBS raced to the courthouse in New Jersey, a jurisdiction with no connection to any party or claim, rather than await LPGA's action in Florida for payment of $1.25 million owed under the License Agreement.  LPGA will file a counterclaim for this amount regardless of the outcome of this motion to dismiss.

of last option" and final "must have number," by which SBS claims it was entitled to receive a final offer for renewal from the LPGA before the negotiation was abandoned. Critical to the issues raised in this Motion, SBS never concretely identifies the purported source of its claimed right. <u>See</u>, <u>e.g.</u>, Compl. ¶¶ 4, 22, 25. The Complaint nonetheless alleges that LPGA somehow conferred upon SBS a binding and enforceable right of last option, which LPGA supposedly breached by failing to renew the license.

Specifically, SBS alleges that beginning in late 2007, it entered into negotiations with IMG, LPGA's media agent, regarding a potential renewal of the License Agreement and the extension of the License Period beyond 2009. <u>Id.</u> at ¶¶ 17-26. IMG allegedly requested that the parties enter into a new license agreement that would commence in January 2008 and continue through December 2012 with an annual license fee of $4.5 million. <u>Id.</u> at ¶ 17. SBS contends that it declined to re-negotiate the license fee for the unexpired term of the License Agreement but offered to pay a license fee in the amount of $3 million for each year that the license was renewed.

In December 2008, SBS's President, Sang Y. Chun, "traveled to LPGA's headquarters in Daytona Beach, Florida, to meet and confer with [the] LPGA Commissioner" regarding contract renewal terms. <u>Id.</u> ¶ 20. Following that meeting, on January 9, 2009, LPGA wrote to Mr. Chun (the "January 9 Letter"), to express LPGA's "final request" for a reasonable offer:

> Since the LPGA and SBS have been partners for so many years, I thought it would be useful to make **a final request**. As we both do business our owners and "shareholders" demand we deliver market value from our products. Fortunately we both represent premier companies and world-class products and have been able to agree on price and value for many years. In the case of the current offer SBS has made for the South Korean television rights of the LPGA for 2010 and beyond, there appears to be a large variation from the price value in the marketplace. In view of the longstanding relationship we would respectfully request whether SBS might want to consider a different offer.

4

> While we discussed our relationship and partnership in December during your visit, **I though it might be worth one more note and possibly a conversation. Please let me know if there is an interest in re-evaluating the offer** SBS has made for the LPGA.

Compl. at Exh. B (emphasis added).

In response to the January 9 Letter, SBS wrote to LPGA on January 20, 2009 (the "January 20 Letter"). The January 20 Letter reaffirms SBS's standing offer, recommends that the parties "explore a shorter term extension of [the License Agreement] to wait for financial conditions to settle," and finally "suggest[s] that the LPGA come up with their 'must have' number." Compl. at Exh. C. Tellingly, the Complaint is devoid of a single fact supporting SBS's most critical allegation that it was entitled to this so-called "right of last option" or "must have number."

On January 30, 2009, LPGA informed SBS that it had reached a broadcast license agreement with J-Golf, a competitor of SBS, and would therefore allow the License Agreement to expire at the end of its term. Id. at ¶ 27. This lawsuit followed.

5

## MEMORANDUM OF LAW

### I.
### THE FEDERAL PLEADING STANDARD AND RULE 12(b)(6)

**A.**    **Pleading Requirements Under Rule 8**

Federal Rule of Civil Procedure 8(a)(2)[3] requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule contemplates the presentation of factual allegations of sufficient clarity and certainty to enable the defendant to formulate a responsive pleading. In other words, a complaint must provide defendant with sufficient notice of the claim against it to allow the defendant to prepare an adequate response.

Although Rule 8 remains in force and continues to embody the concept of notice pleading, the standard is now viewed through the prism of the United States Supreme Court's recent decisions in Bell At. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), which have "retired" the oft-cited holding in Conley v. Gibson, 355 U.S. 41 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 127 S. Ct. at 1969 (quotations and brackets omitted); APR Energy, LLC v. Pakistan Power Resources, LLC, 653 F. Supp. 2d 1227, 1231 (M.D. Fla. 2009).

Now, under Twombly and Iqbal, pleading standards have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." See Auto-Owners Ins. Co. v. Ace Electrical

---

[3] Once a case has been removed to federal court, federal procedural law applies. See Fed. R. Civ. P. 81(c) ("[The Federal Rules] apply to a civil action after it is removed from a state court."). Therefore, in cases removed from state court, "the adequacy of the pleadings is measured by the federal rules." Frederico v. Home Depot, 2006 WL 624901, n. 4 (D.N.J. 2006) (quoting Varney v. R.J. Reynolds Tobacco Co., 118 F. Supp. 2d 63, 67-68 (D. Mass. 2000)), aff'd, 507 F.3d 188 (3d Cir. 2007). This is true even though the federal pleading rules may require a heightened pleading standard over those of the state rules. Id.

Serv., Inc., 648 F. Supp. 2d 1371, 1375-76 (M.D. Fla. 2009) (citing Twombly, 550 U.S. 544 (2007) and Iqbal, 129 S. Ct. 1937 (2009)). Thus it is now "plaintiff's obligation to provide . . . more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; APR Energy, 653 F. Supp. 2d at 1231. Under the new standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. A court is not bound to accept as true under Rule 8 "unsupported conclusions and unwarranted inferences" or "a legal conclusion couched as a factual allegation." APR Energy, 653 F. Supp. 2d at 1231.

A district court considering a complaint's sufficiency after Twombly and Iqbal must now apply a two-step analysis. Auto-Owners, 648 F. Supp. 2d at 1376; Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc., --- F. Supp. 2d ---, 2009 WL 2495616 *3 (M.D. Fla. Aug. 13 2009). First, the court must separate the factual claims from the legal claims. Auto-Owners, 648 F. Supp. 2d at 1376; Nationwide Mut., 2009 WL 2495616 at *3. Then, though the court must accept *well-pled* factual allegations, the court must determine whether the complaint pleads enough factual allegations to support "a claim to relief that is plausible on its face." Auto-Owners, 648 F. Supp. 2d at 1376; Nationwide Mut., 2009 WL 2495616 at *3. This "plausibility" determination is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950 (citation omitted). Accordingly, to survive a motion to dismiss, the factual allegations in a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Twombly, 127 S. Ct. at 1969. Here, even the most indulgent reading of the Complaint reveals that SBS is not entitled to relief on the claims alleged.

**B.**     **Rule 12(b)(6) Standard For Dismissal**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1270 n.19 (11th Cir. 2009). "On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the 'more likely explanations' involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible" and grant the defendant's motion to dismiss. Auto-Owners, 648 F. Supp. 2d at 1376 (quoting Iqbal, 129 S.Ct. at 1950-51). The foregoing standard requires dismissal of all counts against LPGA.

## II.
## DISMISSAL OF INDIVIDUAL COUNTS

As examined in detail below, no single count states a viable cause of action and each should accordingly be dismissed. A threshold issue, however, concerns SBS's restatement of all "prior paragraphs" in each count. Compl. ¶¶ 43, 48, 54, 58, 63, 69, 75, 79, 84, 88. In each such Count, SBS provides no description of what particular conduct apparently contained in the incorporated paragraphs constitutes conduct which supports the particular cause of action. The Eleventh Circuit, Middle District, and this Court "repeated[ly] condemn" shotgun pleadings. Skyventure Orlando, LLC v. Skyventure Management, LLC, 2009 WL 2496553, *6 (M.D. Fla. 2009) (Fawsett, J.) (citing Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008)); see Traffic Jam Events, LLC v. Cortes, WL 1043977, *2 (M.D. Fla. 2009) (Fawsett, J) (citations omitted). For this reason alone, each count against LPGA should be dismissed.

A.  **Count I For Breach of Contract Should be Dismissed**

    *1.*    *Oral Modification of the License Agreement is Precluded*
              *by the Integration Clause, Requiring Dismissal*

Count I attempts to state a claim for breach of contract.  Though it invokes pleading

elements commonly associated with causes of action for fraud and misrepresentation, the central

allegation of Count I appears to be that,

> LPGA, as aforesaid, afforded SBS a right of last option to consider LPGA's final
> must have number with respect to broadcast rights to future LPGA events.  SBS
> accepted LPGA's offer.

Compl. ¶ 44.  Tellingly, SBS does not specifically allege how it was "afforded" a right of last

option, though it must do so in order to state a claim for breach of contract.  "For a breach of

contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a

contract; (2) a material breach of that contract; and (3) damages resulting from the breach.  To

prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3)

consideration; and (4) sufficient specification of the essential terms."  Vega v. T-Mobile USA,

Inc., 564 F.3d 1256, 1272 (11th Cir. 2009) (citations omitted).[4]

In this instance, then, SBS must allege the existence of a contract providing a "right of

last option."  However, the License Agreement does not grant a right of last option to SBS, nor

does SBS allege that it does.  Rather, their legal theory appears to be that the License Agreement

was *modified* to include LPGA's alleged "promises and assurances" that SBS would have a

---

[4] SBS may argue that Ohio law applies to its breach of contract claim because the License Agreement contains an
Ohio choice of law provision.  However, SBS does not allege a claim under the License Agreement, but rather under
a fictitious new contract for a right of last option allegedly memorialized in correspondence in which SBS
"suggested" that LPGA provide such an option.  In any event, there is no reason to believe that Ohio law would
differ from Florida law in rejecting plaintiff's claim that any binding legal obligation arises from one party's
suggestion that another grant it an option.

"right of last option." See Compl. ¶¶ 45-46.[5]  This theory fails because the License Agreement contains an integration clause.  Specifically, it provides as follows:

> This Agreement contains the full and complete understanding between the parties hereto, supersedes all prior agreements and understandings, whether written or oral, and may **not be modified except by written agreement by the parties** hereto.

Compl. Exh. A, ¶ 23 (emphasis added).  By the plain language of paragraph 23 of the License Agreement, alleged "promises and assurances" are ineffective to modify the License Agreement. Id.  To the extent SBS alleges in Count I that it relied on these purported "promises and assurances," the very presence of the integration clause renders such reliance unreasonable as a matter of law.  See Financial Healthcare Associates, Inc. v. Public Health Trust of Miami-Dade County, 488 F.Supp.2d 1231, 1239 (S.D. Fla. 2007) ("It would also be unreasonable to rely on an oral modification where the contract expressly calls for modifications to be written in order to be effective.").

There is no debating that the License Agreement squarely governs the duration and termination of the parties' relationship, but does not provide for the alleged "right of last option." SBS's subjective belief that it was entitled to a right of last option is not cause to rewrite the parties' fully integrated License Agreement.  See Bella Vista, Inc. v. Interior & Exterior Specialties Co., Inc., 436 So. 2d 1107, 1108 (Fla. 4th DCA 1983) ("Courts may not rewrite a contract to relieve one of the parties from the apparent hardship of an improvident bargain").  Count I should be dismissed because the License Agreement may not be orally modified, and does not expressly entitle SBS to a right of last option.

   2.   *SBS Does Not Allege the Existence of a Contract for Right of Last Option*

---

[5] This Court may consider the attachments to the Complaint for purposes of this motion without converting it to one for summary judgment. See Hodge v. Orlando Utilities Commission , 2009 WL 5067758, *3 (M.D. Fla. 2009) (Fawsett, J.) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 US. 308, 323 (2007); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993)).

Even if there was not an integration clause, SBS fails to allege the existence of a contract for a right of last option. Clearly, there is no such written agreement. Thus, SBS would have to allege the existence an oral contract. It fails to do so. See St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004) ("An oral contract, such as the one in this case, is subject to the basic requirements of contract law such as offer, acceptance, consideration and sufficient specification of essential terms."); Browning v. Peyton, 918 F.2d 1516, 1521 (11th Cir. 1990) ("it is a fundamental principle of contracts that in order for a contract to be binding and enforceable, there must be a meeting of the minds on all essential terms and obligations of the contract."); Murray Playmaker Servs., LLC, 512 F. Supp. 2d 1273, 1279 (S.D. Fla. 2007) ("For an oral contract, Plaintiff must also allege facts, that if true, show that the parties mutually reached a clear and definite agreement and left no essential terms open") (citations omitted). Said another way, in order for a contract to arise, a "definite proposal" by one party must be "unconditionally accepted" by the other. Webster Lumber Co. v. Lincoln, 115 So. 498, 504 (Fla. 1927). If negotiations are ongoing, or if any essential matter is left for further consideration, the contract is not complete. Smith v. Locklear, 906 So. 2d 1273,1274 (Fla. 5th DCA 2005); Dows v. Nike, Inc., 846 So. 2d 595, 602 (Fla. 4th DCA 2003); Suggs v. DeFranco's, Inc., 626 So. 2d 1100, 1101 (Fla. 1st DCA 1993).

SBS does not bother to allege offer or acceptance. It certainly does not allege a "definite proposal" that was "unconditionally accepted." Webster, 115 So. at 504. SBS does not allege the specific terms of such a contract either. Stated plainly, SBS fails to identify in Count I a contract to be breached. Like the License Agreement, the January 9 Letter does not mention a "right of last option" or "must have number." To the contrary, the January 9 Letter makes clear that it constituted "a final request" that SBS increase its offer for renewal, or the Agreement

would terminate under its own terms.  Compl. at Exh. B.  SBS responded by "*suggesting*" that LPGA provide a "must have number."  Id. Exh. C (emphasis added).  These negotiations do not amount to a contractual right to a renewal option.  See Univ. Creek Assoc. II, Ltd. v. Boston Am. Financial Group, Inc., 100 F. Supp. 2d 1337, 1340 (S.D. Fla. 1998) (correspondence between the parties did not constitute a binding agreement where certain essential terms were absent).  For the foregoing reasons, Count I fails to state a cause of action and should be dismissed.

**B.**     **Count II for Promissory Estoppel Should Be Dismissed**

   *1.*     *SBS Does Not Allege a "Definite" Promise*

To state an action for promissory estoppel, SBS must allege that it "(1) . . . detrimentally relied on a promise made by the defendant; (2) that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance...; and (3) that injustice can be avoided only through the enforcement of the promise against the defendant." Long v. Murray, 2009 WL 4042961, at *6-7 (M.D. Fla. 2009) (citations omitted).  "Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract."  Advanced Marketing Sys. Corp. v. ZK Yacht Sales, Inc., 830 So.2d 924, 928 (Fla. 4th DCA 2002).  The sole allegation in Count II concerning the LPGA's purported promise is as follows:

> As set forth above, LPGA and IMG clearly and unequivocally represented and promised to SBS that it would receive an opportunity to consider the LPGA's final must have number as to the amount of the license fee, thereby conferring upon SBS a "guaranty" to secure future broadcast rights notwithstanding any inability of the parties to agree upon a compromise fee amount.

Compl. ¶ 49.  SBS's reference to facts "above" leads nowhere, for the allegations within the first 48 paragraphs of the Complaint do nothing to shed light on SBS's purported "guaranty to secure

future broadcast rights." Id. The Defendants and this Court are left to guess who made the promise and to whom was it made, when was it made, and precisely what was promised.

Such vague allegations of a promise should not survive dismissal. To be actionable, a promise must be "definite, of a substantial nature, and [] established by clear and convincing evidence." Id.; Camina Services, Inc. v. Shell Oil Co., 816 F. Supp. 1533, 1540 (S.D. Fla. 1992) (defendant entitled to terminate franchise agreement and reliance on purported indefinite oral statements regarding renewal was unreasonable); Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc., 272 F.Supp.2d 1334, 1350-51 (S.D. Fla. 1999) (dismissing promissory estoppel claim because alleged statements regarding "long lasting partnership" and contract renewal negotiations were "far too indefinite to contradict the unambiguous language in the Agreement").

   2.   *SBS Cannot Establish Reasonable Reliance*

Another fatal flaw in Count II is that SBS cannot establish reasonable reliance. Courts in this District have concluded, as a matter of law, that it is not reasonable for a party to rely on oral promises where there is an agreement covering the same subject and containing a comprehensive merger provision. White Constr. Co., Inc. v. Martin Marietta Materials, Inc., 633 F.Supp.2d 1302, 1334 (M.D. Fla. 2009); see Advanced Marketing Sys. Corp. v. ZK Yacht Sales, Inc., 830 So.2d 924, 928 (Fla. 4th DCA 2002) (affirming rejection of promissory estoppel claim where "the performance that satisfied the detrimental reliance requirement ... is the same performance which represents consideration for the written purchase agreement") (citation omitted); Financial Healthcare Associates, 488 F.Supp.2d at 1240 (dismissing promissory estoppel claim because "any reliance on oral promises that contradict the terms of the parties' written agreement is unreasonable") (citing Harris v. School Board of Duval County, 921 So.2d 725, 735 (Fla. 1st

DCA 2006) ("Reliance on any promise to make payments not called for by the comprehensive, integrated written contracts…would not…be reasonable as a matter of law") (additional citations omitted)); Eclipse Medical, 272 F.Supp.2d at 1351 ("reliance on promises [to extend indefinitely parties' business relationship] specifically contradictory to a written agreement is unjustified as a matter of law") (citing W.R. Grace v. Geodata Serv., Inc., 547 So.2d 919, 925 (Fla. 1989) (existence of contract addressing duration of business relationship weighs against promissory estoppel claim and "mere expectations based on oral representations regarding future rights of parties to a contract, specific in its written terms, has been held insufficient to support a [promissory estoppel] cause of action")); Rosa v. Amoco Oil Co., 262 F. Supp. 2d 1364, 1368 (S.D. Fla. 2003) (granting a motion to dismiss claims based on fraud, because the "plaintiff's reliance upon oral statements which were at variance with the written documents were not reasonable as a matter of law").

In this instance, the License Agreement negates the allegation that SBS reasonably relied upon LPGA's oral promise. Dismissal with prejudice is therefore appropriate.

## C.     Count III Should be Dismissed Because Plaintiff's Declaratory Judgment Claim is Duplicative of Other Counts and Thus Superfluous

In Count III, SBS simply restates its breach of contract and promissory estoppel claims, this time calling it a claim for declaratory relief. Federal courts have broad discretion to determine whether to entertain a declaratory judgment action under 28 U.S.C. § 2201. Winto v. Seven Falls Co., 515 U.S. 277, 287 (1995) ("we have repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant"). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed with the merits before staying or dismissing the action." Id.

14

at 288.  Requests for declaratory judgment which are redundant to other claims and add nothing to

a lawsuit—like a request for declaratory judgment that restates a claim for breach of contract—

should be dismissed.  See, e.g., Tobon v. Am. Sec. Ins. Co., 2007 WL 1796359, *2 (S.D. Fla. June

20, 2007); Xtria LLC v. Tracking Sys., Inc., 2007 WL 1791252, * 3 (N.D. Tex. June 21, 2007).

Further, declaratory relief cannot be used to offer legal advice or to resolve purely factual issues,

including whether a party has breached a contract.  Marotto v. Scottsdale Ins. Co., 2008 WL

2952830, *2 (M.D. Fla. July 30, 2008).  Count III simply restates the breach of contract claim and

serves no useful purpose.  It should be dismissed.

## D.   **Count IV For Breach of Fiduciary Duty Must Be Dismissed**

The Complaint alleges that "[b]y virtue of the parties' 15 year joint venture, the LPGA

owes certain fiduciary duties to SBS" and that the LPGA breached its duties by "(i) failing to

honor SBS' right of last option and otherwise negotiating in bad faith with respect to the renewal

of SBS' broadcast rights; and (ii) intentionally failing to comply with the obligations imposed

under the Agreement with respect to the 2009 Schedule."  Compl. ¶60.  In other words, SBS

again recharacterizes its breach of contract claim as a breach of fiduciary duty claim.  However,

because the Complaint does not allege a plausible basis for the existence of a fiduciary duty,

Count IV should be dismissed.  The claim is also barred by the economic loss rule.

### 1.   *Count IV Does Not Allege a Valid Fiduciary Duty*

First, SBS cannot establish a fiduciary duty.   A business relationship between

sophisticated entities that negotiate their respective rights and obligations at arms-length (on the

one hand) is the antithesis of a fiduciary relationship, which exists only "between two persons

when 'one of them is under a duty to act for or to give advice for the benefit of another upon

matters within the scope of that relation'" (on the other hand).  North American Clearing, Inc. v.

15

Brokerage Computer Sys., Inc., 2008 WL 341309, at *4 (M.D. Fla. 2008) (Fawsett, J.) (citing Doe v. Evans, 814 So.2d 370, 374 (Fla. 2002)); Action Nissan, Inc. v. Hyundai Motor America, 617 F.Supp.2d 1117, 1192-93 (M.D. Fla. 2008) (Fawsett, J.).   Absent an *express* fiduciary relationship (there is none here), there must be evidence of special circumstances sufficient to impose an *implied* fiduciary duty.   See Cheney v. IPD Analytics, LLC, 2009 WL 1298405, *4 (S.D.Fla. April 16, 2009), adopted by 2009 WL 1298405 (S.D.Fla. 2009) ("[The] fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party.") (quoting Lanz v. Resolution Trust Corp, 764 F. Supp. 176, 179 (S.D.Fla. 1991)); Irwin v. Miami-Dade County Public Schools, 2009 WL 497652, *7 (S.D.Fla. Feb. 25, 2009).

Plaintiff alleges an arms-length business relationship between parties to a contract – not a fiduciary relationship in which either defendant purported to act on plaintiff's behalf.   There is no allegation of any express fiduciary relationship, nor any special circumstances from which an elevated duty of "special trust or confidence" could be inferred.   Indeed, the License Agreement itself belies plaintiff's allegation of a purported "joint venture."   License Agreement ¶17 ("This Agreement is made between principals and nothing herein contained shall be deemed to constitute a partnership or joint venture between the parties hereto."); Compl. Exh. A.

Try though it might to avoid the very License Agreement it negotiated, executed, and operated under for years, SBS's rights begin and end with that agreement.   And an arms-length contractual relationship is simply insufficient, under the foregoing authorities, to create a fiduciary relationship.   Count IV should be dismissed.

2.    *Count IV Is Barred by the Economic Loss Rule*

The Economic Loss Rule also bars the assertion of a fiduciary duty claim "when the claim for breach of fiduciary duty is based upon and inextricably intertwined with the claim for breach of contract." North American Clearing, 2008 WL 341309 (citations omitted); see Action Nissan, 617 F.Supp.2d at 1192-93 (fiduciary duty claim barred by economic loss rule); Granat v. Axa Equitable Life Ins. Co., 2006 WL 3826785, at *3-5 (S.D. Fla. 2006) (dismissing fiduciary claim "inextricably intertwined and dependent upon the breach of contract claim."); Detwiler v. Bank of Central Florida, 736 So.2d 757, 759 (Fla. 5th DCA 1999) (affirming dismissal of fiduciary claim because "the claim of breach is dependent upon the existence of a contractual relationship between the parties" and therefore "the economic loss rule limits the plaintiff to pursuing her rights in contract."); see also Miera v. National City Mortgage, 2009 WL 2495757, at *4 (M.D. Fla. 2009) ("a tort claim for breach of fiduciary duty is foreclosed where the parties' relationship is entirely dependent on the existence of a contract."); Indemnity Ins. Co. v. Am. Aviation, Inc., 891 So.2d 532, 537 (Fla. 2004).  Thus, Count IV should be dismissed for this reason as well.

As in Action Nissan, the parties here are in contractual privity, the fiduciary duty alleged is plainly inextricably intertwined with the breach of contract claim, and SBS does not allege an independent special relationship giving rise to a duty.  This is not a close question.  Count IV is also barred by the economic loss rule.

**E.     Counts V and VI, Sounding in Intentional and
         Negligent Misrepresentation, Should Be Dismissed**

Both of SBS's misrepresentation claims are fatally flawed for the same three reasons.

1.    *Broken Promises of Future Performance Are Not Actionable*

To be actionable, a misrepresentation must concern past or existing facts. <u>Sleight v. Sun and Surf Realty, Inc.</u>, 410 So. 2d 998 (Fla. 3d DCA 1982).   Broken promises of future performance are not actionable fraudulent misrepresentations.   <u>Stoler v. Metropolitan Life Ins. Co.</u>, 287 So. 2d 694, 695 (Fla. 3d DCA 1974) ("a promise to do something in the future is not fraud in a legal sense"); <u>Maunsell v. American Gen. Life and Accident Ins. Co.</u>, 707 So. 2d 916, 917 (Fla. 3d DCA 1998) (an employer's alleged broken promise to promote and hire not actionable as fraud).

SBS alleges the same misrepresentation in Counts V and VI:  "LPGA represented, promised, and assured SBS that it would be afforded an opportunity to consider the LPGA's final must have number on the issue of future license fees."  Compl. ¶ 64, 71.  <u>Sleight</u>, <u>Stoler</u>, and <u>Maunsell</u> support dismissal of both counts, as LPGA's alleged broken promise to afford SBS a chance to accept a final must have number is the very definition of a broken promise of future performance.   Because SBS's misrepresentation claims are not premised upon an actionable misrepresentation of material fact, dismissal is required.

> 2.   *Counts V and VI Are Also Barred by the Economic Loss Rule*

SBS's basis for its misrepresentation claims is identical to its purported basis for breach of contract.  "Pursuant to the economic loss rule, 'courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract.'"  <u>North American Clearing</u>, 2009 WL 1513389, at *3 (M.D. Fla. 2009) (Fawsett, J.) (citing <u>Indemnity Ins. Co. of North America v. American Aviation, Inc.</u>, 891 So. 2d 532, 536-537 (Fla. 2004) ("A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made")); <u>see also</u> <u>Ginsberg v. Lennar Fla. Holdings, Inc.</u>, 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("Where

damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."), review denied, 659 So.2d 272 (Fla. 1995).

Under the Economic Loss Rule, a tort remedy does not arise from a contractual relationship unless the plaintiff relies on independent facts giving rise to a preexisting duty in tort. Thus, "misrepresentations relating to the breaching party's performance under a contract do not give rise to an independent cause of action, because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement." North American Clearing , 2009 WL 1513389, at *11-13 (citations omitted) (dismissing misrepresentation claims that were "interwoven and indistinct from the heart of the contractual agreement' and 'inseparable from the essence of the parties' agreement'") (quoting Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74, 77-78 (Fla. 3d DCA 1997)).

Again, SBS does not allege facts that give rise to an independent duty owed to SBS by the LPGA. It has alleged only economic loss resulting from non-performance of a contract (albeit an imaginary contract), which allegedly required LPGA to afford SBS with a right of last option. SBS's misrepresentation claims are premised upon the LPGA's failure to provide this right of last option, the very essence of the alleged contract. Accordingly, the Economic Loss Rule operates to bar SBS's misrepresentation claims (Count V and Count VI), as they seek recovery of economic losses in tort for an alleged breach of contract.

3.    *Counts V and VI Are Not Pled With Sufficient Particularity*

Fraud claims (including claims for negligent misrepresentation) must meet the heightened pleading standard under Rule 9. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"); see Baily v. Janssen

Pharmaceutica, Inc., 2006 WL 3665417, *7 (S.D.Fla. Nov. 14, 2006) ("Negligent misrepresentation, like fraud, must also be pled with specificity"), aff'd, 536 F.3d 1202 (11th Cir. 2008); Souran v. Travelers Ins. Co., 982 F.2d 1497, 1551 (11th Cir. 1993) ("action for negligent misrepresentation sounds in fraud rather than negligence").

"Particularity" under Rule 9(b) requires a plaintiff to allege a time frame during which a purported misrepresentation was made, identify the person who made the purported misrepresentation, and allege the specific statement or statements upon which the claim is based. See, e.g., NCR Credit Corp. v. Reptron Electronics, Inc., 155 F.R.D. 690 (M.D. Fla. 1994). Plaintiffs must allege the speaker who made the misrepresentation – and to whom – in addition to the content of the misrepresentation. See Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004), cert. denied, 125 S.Ct. 271 (2004). "[T]he complaint must identify the 'who, what, where, when, and how' of the alleged fraud." U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006), cert. denied, 549 U.S. 881 (2006) (quoting U.S. ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003), cert. denied, 540 U.S. 875 (2003)). Moreover, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy Rule 9(b). See Ashcroft v. Iqbal, 129 S.Ct. at 1951 (conclusory allegations of willful and malicious conduct "are not entitled to be assumed true").

The Complaint does not meet any of these requirements; SBS merely alleges,

> 59.    Defendants represented, promised, and assured SBS that it would be afforded an opportunity to consider the LPGA's final "must have number" on the issue of future license fees.

> 60.    SBS relied on Defendants' representations, promises, and assurances, all of which were false and misleading, to its substantial detriment.

> 61.    Contrary to Defendants' representations, promises, and assurances, the LPGA never offered SBS an opportunity to consider its final "must

> have number" and awarded future broadcast rights to LPGA events to J-Golf.
>
> 62.    Defendants' conduct, as aforesaid, was willful, wanton and in reckless disregard of SBS' rights and was otherwise wrongful.
>
> 63.    By virtue of Defendant' deceitful conduct and affirmative misrepresentations, SBS has and will continue to suffer substantial damages.

Compl. ¶¶ 59-63. These vague allegations are not sufficiently particular and do not state a claim.

SBS fails to identify the person or persons who it contends made the alleged misrepresentations,

nor does SBS identify when the purported misrepresentations were made, let alone any other

detail concerning their misrepresentation theories.  Failure to comply with Rule 9 (and indeed

Rule 8) requires dismissal.

**F.      Count VII Misconstrues the License Agreement and Must be Dismissed**

Count VII is a breach of contract claim concerning delivery of the 2009 LPGA schedule

of events. Compl. ¶¶ 75-78. Without identifying a specific provision in the License Agreement,

Count VII alleges that SBS was "entitled to receive, on an exclusive basis, annual broadcast

rights to Events in an amount substantially similar to and of comparable quality to the Events

identified on the 2005 Schedule." Id. at ¶ 76. Paragraph A of the License Agreement governs

the annual schedule. Paragraph A does state that the "number of events shall be substantially

similar *during each year of the Term*," but contains no language concerning "comparable

quality," nor does it tie the number of events to the 2005 schedule as SBS alleges. Id.

This Court has held "'What will constitute a breach of contract is a matter of law to be

determined by the court.'" Action Nissan, 617 F.Supp.2d at 1195 (quoting Winter Garden Citrus

Growers' Ass'n v. Willits, 113 Fla. 131, 151 So. 509, 511 (1933)).  The License Agreement

contradicts the allegations in paragraph 76 of the Complaint, requiring dismissal.[6]

**G.     Counts VIII and IX Should Be Dismissed Because Neither Alleges Any Facts Supporting the Claimed Breach**

Counts VIII and IX allege breach of the "confidentiality provision" and the "exclusivity provision" contained in the License Agreement. Compl. ¶¶ 81, 86. The confidentiality provision states that "[n]either party nor any of its employees shall divulge to any third party (except Trans World International, Inc.) any of the financial terms of this Agreement without the express permission of the other . . . ." Id. In wholly conclusory fashion, SBS simply alleges LPGA "disclosed to third-parties including, without limitation, J-Golf, the financial terms of the Agreement in direct violation of SBS's rights thereunder." Compl. at ¶ 81. SBS does not allege a single fact to support its claim.

Likewise, in Count IX, SBS baldly alleges that events were "inappropriately excluded" from the 2009 Schedule, but alleges no facts whatsoever to support that conclusion. In fact, the License Agreement clearly contemplates that schedules are subject to change and Programs may be withdrawn due to any force majeure "or by any other circumstances unforeseen at the time of the entering into the Agreement." License Agreement ¶ 20(a); Compl. Exh. A.

Wholly conclusory allegations are insufficient to survive dismissal. See Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1271 (Fla. 11th Cir. 2004). Again, it is "plaintiff's obligation to provide . . . more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; APR Energy, 653 F. Supp. 2d at 1231. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. A court is not bound to accept

---

[6]  To the extent SBS's allegation concerning the amount of events may be salvaged through yet another amended pleading, SBS must allege ultimate facts concerning how it contends that provision of the License Agreement was breached.

as true under Rule 8 "unsupported conclusions and unwarranted inferences" or "a legal conclusion couched as a factual allegation." APR Energy, 653 F. Supp. 2d at 1231.  Counts VIII and IX require dismissal because neither contains allegations of fact supporting the breach theories alluded to therein.

**H.     Count X Does Not State a Claim for Unjust**
**Enrichment Because an Express Agreement Exists**

Florida law prohibits a cause of action for unjust enrichment where as here the relationship between the parties is governed by a valid contract. North American Clearing, 2008 WL 341309, *5 (dismissing unjust enrichment claim because "a claimant may not pursue an equitable theory such as unjust enrichment if an express contract exists.") (citing Ocean Communications, Inc. v. Bubeck, 956 So.2d 1222, 1225 (Fla. 4th DCA 2007) ("It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter.") (citation omitted)); see also Moynet v. Courtois, 8 So. 3d 377, 379 (Fla. 3d DCA 2009) ("[W]here there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment."); Diamond 'S' Development Corp. v. Mercantile Bank, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.").

Moreover, unjust enrichment is an equitable remedy that is unavailable where as here monetary damages are an adequate legal remedy.  "It follows that a party may not maintain an action for unjust enrichment if the damages sought are covered by an express contract." David v. American Suzuki Motor Corp., 629 F.Supp.2d 1309, 1324-25 (S.D. Fla. 2009) (dismissing unjust enrichment claim where allegations were identical to those giving rise to warranty claim, alleged

damages "are not distinct from those pled under express warranty," and "Plaintiff fails to allege that this contractual remedy is inadequate, as required to state a claim for unjust enrichment.")

Here, the parties' relationship is governed by the License Agreement. Thus, SBS may not claim unjust enrichment. The allegations giving rise to purported breach of contract and unjust enrichment claims are identical, as are allegations of damages arising from the non-renewal of the Agreement. Count X should be dismissed with prejudice.

## I.   **Counts XI and XII Fail To State a Tortious Interference Claim as to LPGA**

Finally, plaintiff asserts in Counts XI and XII tortious interference claims against IMG for allegedly inducing LPGA to breach the License Agreement with SBS. However, plaintiff demands judgment against LPGA rather than against IMG in Count XI, even though the allegations set forth therein refer solely to alleged interference of IMG in the contractual relationship between SBS and LPGA. To the extent plaintiff purports to assert a tortious interference claim against LPGA, such a claim must be dismissed because a signatory to a contract cannot tortiously interfere with its own contract. Rudnick v. Sears, Roebuck and Co., 358 F.Supp.2d 1201, 1206 (S.D.Fla. 2005) ("under Florida law, a cause of action for tortious interference generally does not exist against one who is himself a party to the business relationship allegedly interfered with.").

## Conclusion

For the foregoing reasons, this Court should dismiss each claim against LPGA.

Respectfully submitted,

**Edwards Angell Palmer & Dodge LLP**


By: /s/ C. Cory Mauro
    C. Cory Mauro
    Florida Bar No. 384739
    One North Clematis St., Suite 400
    West Palm Beach, Florida 33401
    (561) 833-7700 Telephone
    (561) 655-8719 Facsimile
    cmauro@eapdlaw.com

    *and*

    Robert Novack
    N.J. Bar No. RN4514
    Mary L. Moore
    N.J. Bar No. MM4302
    Edwards Angell Palmer & Dodge LLP
    One Giralda Farms
    Madison, NJ  07940
    rnovack@eapdlaw.com
    mmoore@eapdlaw.com

    *Counsel for LPGA*


## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.


By: /s/ C. Cory Mauro
    C. Cory Mauro

## SERVICE LIST
*Seoul Broadcasting System International., Inc. v.*
*Ladies Professional Golf Association and IMG World, Inc.*
**CASE NO. 6:09-cv-02050-Orl-19 PCF-DAB**
United States District Court, Middle District of Florida

Robert W. Hudson, Esq.
Infante, Zumpano, Hudson & Miloch, LLC
500 S. Dixie Highway, Ste. 302
Coral Gables, FL  33134
robert.hudson@IZHMLAW.com

Joseph Castrodale, Esq.
Richik Sarkar, Esq.
Ulmer & Berne LLP
1660 West 2nd Street, Suite 1100
Cleveland, OH  44113-1448
jcastrodale@ulmer.com
rsakar@ulmer.com

James M. Kloss, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
P.O. Box 531086
Orlando, FL 32853-1086
james.kloss@wilsonelser.com

Kim Marie Connor, Esq.
Thomas F. Quinn, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
33 Washington Street
Newark, NJ 07102
kim.connor@wilsonelser.com
thomas.quinn@wilsonelser.com

Steven R. Klein, Esq.
Joseph Barbiere, Esq.
Adam Goldstein, Esq.
Cole, Schotz, Meisel, Forman & Leonard
25 Main Street (07601)
P.O. Box 800
Hackensack, NJ 07602-0800
sklein@coleschotz.com
jbarbiere@coleschotz.com
agoldstein@coleschotz.com

C. Cory Mauro, Esq.
Edwards Angell Palmer & Dodge LLP
One North Clematis Street, Suite 400
West Palm Beach, FL 33401
cmauro@eapdlaw.com

Robert Novack, Esq.
Mary L. Moore, Esq.
Edwards Angell Palmer & Dodge LLP
One Giralda Farms
Madison, NJ  07940
rnovack@eapdlaw.com
mmoore@eapdlaw.com

NWK 226949.1