**SEOUL BROADCASTING SYSTEM**
**INTERNATIONAL, INC.,**

                    **Plaintiff,**

**-vs-**                                           **Case No.  6:09-cv-2050-Orl-19DAB**

**LADIES PROFESSIONAL GOLF**
**ASSOCIATION and IMG WORLDWIDE, INC.,**

                    **Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1.      Motion to Dismiss Amended Complaint by Defendant Ladies Professional Golf
Association (Doc. No. 55, filed Feb. 4, 2010);

2.      Motion to Strike Demand for Punitive Damages and Attorneys' Fees by
Defendant Ladies Professional Golf Association (Doc. No. 56, filed Feb. 4,
2010);

3.      Motion to Dismiss Amended Complaint by Defendant IMG Worldwide, Inc.
(Doc. No. 60, filed Feb. 8, 2010);

4.      Motion to Strike Demand for Punitive Damages and Attorneys' Fees by
Defendant IMG Worldwide, Inc. (Doc. No. 61, filed Feb. 8, 2010);

5.      Opposition to Defendant Ladies Professional Golf Association's Motion to
Dismiss by Plaintiff Seoul Broadcasting System International, Inc. (Doc. No. 63,
filed Feb. 18, 2010);

6.      Opposition to Defendant IMG Worldwide, Inc.'s Motions to Dismiss and to Strike by Plaintiff Seoul Broadcasting System International, Inc. (Doc. No. 64, filed Feb. 22, 2010); and

7.      Reply in Support of Motion to Dismiss by Defendant IMG Worldwide, Inc. (Doc. No. 73, filed Mar. 18, 2010).

## Background

### I.  Factual Allegations[1]

This case concerns negotiations to extend a licensing agreement between Defendant Ladies Professional Golf Association ("LPGA") and Plaintiff Seoul Broadcasting System International, Inc. ("SBS"), under which SBS had the right to broadcast selected LPGA tournaments in South Korea from January 1, 2005 to December 31, 2009 ("Licensing Agreement").  (Doc. No. 36 ¶¶ 13-14.)  In each year covered by the Licensing Agreement, the LPGA was obligated to notify SBS of the events that SBS could broadcast by February 1 of that year, subject to the reasonable approval of SBS.  (*Id.* ¶ 15; Doc. No. 36-1 at 2.)  The Licensing Agreement further specified that the number of events on SBS's broadcast schedule shall be substantially similar in each year.  (Doc. No. 36 ¶ 15; Doc. No. 36-1 at 2.)  SBS asserted that it received the right to broadcast approximately thirty events annually over the past several years.  (Doc. No. 36 ¶ 16.)

SBS's broadcast license was allegedly exclusive, subject only to the LPGA's exercise of certain ancillary rights enumerated in the Licensing Agreement.  (*Id.* ¶ 18; Doc. No. 36-1 at 3-4.)  The Licensing Agreement also contained a confidentiality provision prohibiting SBS and the LPGA

---

[1] The facts presented in this Order are derived from the allegations of the Amended Complaint.  These facts are included only to provide context and should not be construed as findings of fact.

from disclosing the financial terms of the Agreement without the express permission of the other party, except as to Trans World International, Inc. or as necessary to comply with any legal or regulatory requirements.  (Doc. No. 36 ¶ 19; Doc. No. 36-1 at 12.)

SBS asserts that negotiations to extend the Licensing Agreement commenced in 2007 between SBS and IMG Worldwide, Inc. ("IMG"), the authorized media agent for the LPGA.  (Doc. No. 36 ¶ 20.)  SBS rejected the LPGA's proposed $4.5 million base license fee and made a counter-offer of $3 million annually.  (*Id.* ¶ 22.)  Negotiations continued during 2008 without an agreement.  (*Id.*)  SBS maintains that in December 2008, Sang Y. Chun, the president of SBS, met with LPGA Commissioner Carolyn F. Bivens and suggested to Bivens that the LPGA consider presenting SBS with a final "must have number" to serve as SBS's final basis for consideration.  (*Id.* ¶ 24.)  Following this meeting, SBS allegedly received confirmation from Brenda Lee, a representative of IMG, that "as in the past, SBS would receive an opportunity to consider the LPGA's final must have number as to the amount of the license fee."  (*Id.* ¶ 25.)  SBS maintains that it accepted this opportunity.  (*Id.*)  On January 20, 2009, Chun allegedly wrote Bivens and "again suggest[ed] that the LPGA come up with their 'must-have' number . . . that will serve as [SBS's] final basis for consideration."  (*Id.* ¶ 27; Doc. No. 36-3 at 3.)

SBS asserts that on January 30, 2009, three days before Chun and Bivens were scheduled to meet to continue negotiations, the LPGA reached a tentative agreement with J-Golf, a competitor of SBS, for future South Korean LPGA television broadcast rights.  (Doc. No. 36 ¶ 30.)  SBS allegedly responded by offering the LPGA an annual licensing fee of 5% above the highest offer received from any other potential licensee.  (*Id.* ¶¶ 30-31.)  SBS maintains that on February 12, 2009, the LPGA publicly announced that it was severing its relationship with SBS effective January

1, 2010, and that it had awarded J-Golf exclusive broadcast rights to future LPGA events. (*Id.* ¶ 33.) SBS then publicly stated that it would no longer sponsor the SBS Open, an LPGA event, or otherwise financially support LPGA ventures. (*Id.* ¶ 34.)

SBS contends that the LPGA subsequently retaliated by revising SBS's 2009 broadcast schedule to decrease both the quantity and quality of events that SBS was entitled to broadcast. (*Id.* ¶ 35.) In particular, the LPGA allegedly eliminated several events originally included as part of SBS's 2009 broadcast coverage that SBS had broadcast in prior years and included other events that were not official LPGA tour events and that SBS was entitled to broadcast by virtue of its sponsorship rights. (*Id.* ¶ 36.) SBS maintains that it rejected the revised schedule and each of the three subsequent revisions proposed by the LPGA for failure to comply with the Licensing Agreement. (*Id.* ¶¶ 37-41.)

## II.  Procedural History

On December 23, 2009, after this case was transferred to this Court, SBS filed a twelve-court Amended Complaint against the LPGA and IMG. (Doc. No. 36.) The LPGA and IMG filed separate motions to dismiss and to strike, asserting that each count of the Amended Complaint should be dismissed for failure to state a claim and that SBS's requests for punitive damages and attorneys' fees should be stricken. (Doc. Nos. 55-56, 60-61.) SBS filed timely responses in opposition. (Doc. Nos. 63-64.) With leave of this Court, IMG filed a reply in support of its motion to dismiss. (Doc. No. 73.)

## Standard of Review

## I.  Motion to Dismiss

When ruling on a motion to dismiss for failure to state a claim upon which relief may be

granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations

of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## II. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a court may, on its own motion or by motion of a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). It is not intended to "procure the dismissal of all or part of a complaint." *Rockholt v. United Van Lines*, 697 F. Supp. 383, 386 (D. Idaho 1988) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (1969)). A motion to strike should be granted only if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995). Because this standard is rarely met, "[m]otions to strike are generally disfavored by the Court and are often considered time wasters." *Somerset Pharm., Inc. v. Kimball*, 168 F.R.D. 69, 71 (M.D. Fla. 1996).

## Analysis

### I. Shotgun Pleading

The LPGA asserts that the Amended Complaint should be dismissed as a shotgun pleading because it fails to specify the alleged conduct supporting each cause of action. (Doc. No. 55 at 8.)

Each count in the Amended Complaint incorporates all prior factual allegations by reference, a common mechanism found in shotgun pleadings. *See, e.g.*, *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 980 (11th Cir. 2008); *Skyventure Orlando, LLC v. Skyventure Mgmt., LLC*,

No. 6:09-cv-396-Orl-19KRS, 2009 WL 2496553, at *6 (M.D. Fla. Aug. 12, 2009). However, the Amended Complaint is not a shotgun pleading because the factual allegations pertaining to each count in the Amended Complaint are readily discernable. *Cf. Anderson v. Dist. Bd. of Trs. of Cent. Fla. Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) ("[Plaintiff's] complaint is a perfect example of 'shotgun' pleading in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.") (internal citation omitted).

## II. Count I: Breach of Right of Last Option

In Count I, SBS maintains that the LPGA breached a contract with SBS by failing to provide SBS the right of last option for post-2009 LPGA broadcast rights in South Korea. (Doc. No. 36 at 14.) The LPGA argues that SBS has failed to state a claim for breach of contract because the alleged facts do not establish the existence of a valid contract. (Doc. No. 55 at 9-12.)

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)). "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Id.* (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

SBS has sufficiently pled the elements of offer and acceptance by alleging that the LPGA, through IMG, "afforded SBS a right of last option to consider [the] LPGA's final must have number with respect to broadcast rights to future LPGA events" and that SBS accepted that offer. (Doc. No. 36 ¶¶ 25, 44.) The element of consideration is plausibly established by the allegation that SBS

detrimentally relied[2] on the promises and assurances of the LPGA and IMG that it had the right of last option.  (*Id.* ¶ 45); *see Pinnacle Port Cmty. Ass'n, Inc. v. Orenstein*, 872 F.2d 1536, 1544 (11th Cir. 1989) ("Detrimental reliance is valid consideration for a contract.") (citing *Crown Life Ins. Co. v. McBride,* 517 So. 2d 660, 663 (Fla. 1987)).  Finally, SBS has sufficiently specified the essential terms of the contract by alleging that SBS would have the right of last option to consider renewing the Licensing Agreement at the LPGA's "must have number" set by the LPGA.  (Doc. No. 36 ¶ 45.) Therefore, SBS plausibly established the existence of a contract.  SBS sufficiently pled a breach of that contract and damages by asserting that the LPGA did not present SBS with its final must have number and awarded South Korean broadcast rights to J-Golf, thereby causing SBS substantial damages.  (*Id.* ¶¶ 46-47.)  Accordingly, SBS has stated a claim for breach of contract.

## III.  Count II: Promissory Estoppel

As an alternative ground for relief to the breach of contract claim in Count I,[3] SBS asserts

---

[2] The LPGA asserts that any reliance by SBS is unreasonable as a matter of law because any modifications to the Licensing Agreement must be in writing pursuant to its integration clause. (Doc. No. 55 at 10.)  However, as acknowledged by the LPGA in its Motion to Dismiss, SBS alleges that the right of last option was a "new contract for a right of last option allegedly memorialized in correspondence," not a modification of the Licensing Agreement.  (*Id.* at 9 n.4.)  Accordingly, the integration clause does not render SBS's asserted detrimental reliance unreasonable.

In its reply brief, IMG asserts that SBS has failed to allege facts plausibly establishing detrimental reliance.  (Doc. No. 73 at 3-5.)  Detrimental reliance may be shown by negotiating in reliance on a promise.  *Pinnacle Port Cmty. Ass'n, Inc.*, 872 F.2d at 1544.  Therefore, SBS has sufficiently pled detrimental reliance by asserting that after the LPGA promised SBS the right of last option in December 2008, SBS continued negotiations with the LPGA and planned to meet with LPGA Commissioner Bivens on February 2, 2009, to bring closure to the ongoing negotiations. (Doc. No. 36 ¶¶ 25-28.)

[3] The LPGA quotes *Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So. 2d 924 (Fla. 4th DCA 2002), for the proposition that "[p]romissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract."  *Id.* at 928 (quoting *Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990)).  If, as alleged in the Amended Complaint, the detrimental reliance requirement of a

a claim for promissory estoppel against the LPGA in Count II. (Doc. No. 36 at 15.) The LPGA argues that this claim should be dismissed because SBS does not allege a definite promise and because SBS has failed to plead reasonable reliance on the promise. (Doc. No. 55 at 12-14.)

## A. Definite Promise

The LPGA correctly asserts that to recover on a theory of promissory estoppel, a promise must be "definite, of a substantial nature, and established by clear and convincing evidence." *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 920 (Fla. 1989). However, SBS need not prove the promise by clear and convincing evidence at this stage of the proceedings. Rather, SBS must simply allege facts plausibly establishing the existence of a definite promise. *Iqbal*, 129 S. Ct. at 1949. SBS has sufficiently pled a promise by alleging that the LPGA, through its representatives at IMG, "afforded SBS a right of last option to consider [the] LPGA's final must have number with respect to broadcast rights to future LPGA events." (Doc. No. 36 ¶¶ 25, 44.) Therefore, the LPGA's argument to dismiss SBS's promissory estoppel claim for lack of a definite promise is without merit.

## B. Reasonable Reliance

The LPGA argues that SBS could not have reasonably relied on the LPGA's promise to afford SBS a right of last option because the creation of a right of last option by oral agreement contradicted the merger clause in the Licensing Agreement. (Doc. No. 55 at 13-14.) The merger

---

plaintiff's promissory estoppel claim is also the consideration underlying the contract providing SBS a right of last option, "the doctrine of promissory estoppel is not applicable." *Id.* (citing *Gen. Aviation, Inc.*, 915 F.2d at 1042.) But if the Court finds that there is no valid contract between SBS and the LPGA, as opposed to no breach of a valid contract, this rule would not apply, and SBS could proceed on its claim of promissory estoppel. *See id.* (finding that promissory estoppel "was unavailable" because a written contract existed between the parties); Fed. R. Civ. P. 8(d)(3) (permitting a plaintiff to plead inconsistent claims). Therefore, the Court will address the parties arguments pertaining to the sufficiency of the claim of promissory estoppel.

clause states that the Licensing Agreement "contains the full and complete understanding between the parties . . ., supersedes all prior agreements and understandings . . ., and may not be modified except by written instrument signed by the parties . . . ." (Doc. No. 36-1 at 13.) Because the right of last option was allegedly promised to SBS after the formation of the Licensing Agreement and because the parties do not dispute that the right of last option did not modify Licensing Agreement, the merger clause does not apply. (Doc. No. 36 ¶¶ 13, 25; Doc. No. 55 at 9 n.4.) Therefore, SBS's claim of promissory estoppel should not be dismissed for failure to allege reasonable reliance on the LPGA's promised right of last option.

## IV. Count III: Declaratory Judgment

SBS seeks a declaratory judgment that the LPGA conferred upon it a binding an enforceable right of last option to consider the LPGA's final must have number and that the LPGA breached its obligations arising out of SBS's right of last option. (Doc. No. 36 at 16.) The LPGA contends that this claim should be dismissed because it merely restates SBS's breach of contract claim. (Doc. No. 55 at 15.)

Pursuant to 28 U.S.C. § 2201(a), a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). The Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). Nevertheless, in determining SBS's breach of contract claim against the LPGA in Count I, the Court must first consider whether a contract exists. *See supra* part I. If a contract

exists but there is no breach, SBS could receive a judgment declaring its rights under that contract. *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 125 (2007) (seeking a declaration of rights under a contract). Therefore, SBS's claim for a declaratory judgment in Count III should not be dismissed.

## V. Count IV: Breach of Fiduciary Duty by LPGA

SBS alleges that by virtue of its 15-year joint venture with the LPGA, the LPGA owed SBS the fiduciary duties of trust, loyalty and good faith. (Doc. No. 36 ¶ 59.) SBS asserts that the LPGA breached those duties by failing to honor SBS's right of last option, by negotiating the renewal of SBS's broadcast rights in bad faith, and by intentionally failing to set the 2009 broadcast schedule in compliance with the Licensing Agreement. (*Id.* ¶ 60.) The LPGA argues that this claim should be dismissed because the alleged facts show an arms-length business relationship between SBS and the LPGA for which a fiduciary relationship cannot exist and because the claim for breach of fiduciary duty is barred by the economic loss rule. (Doc. No. 55 at 15-17.)

The Court first addresses the LPGA's argument that the claim for breach of fiduciary duty is barred by the economic loss rule. "Pursuant to Florida law, the economic loss rule provides that parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of the breach of contract." *Royal Surplus Ins. Co. v. Coachman Indus., Inc.*, 184 F. App'x 894, 902 (11th Cir. 2006) (internal quotations omitted). The economic loss rule applies to the tort of breach of fiduciary duty "where the parties are in contractual privity and one seeks to recover damages . . . for matters arising from the contract." *Id.* (quoting *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.,* 891 So. 2d 532, 536 (Fla. 2004)); *see also Detwiler v. Bank of Cent. Fla.*, 736 So. 2d 757, 759 (Fla. 5th DCA 1999) (finding that based on the economic loss

rule, "a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties"). Because the LPGA's alleged failure to honor SBS's right of last option and failure to set the 2009 broadcast schedule concern disputed contractual obligations of the LPGA, (Doc. No. 36 at 14, 20-21), the economic loss rule bars SBS's claim for breach of fiduciary duty based on those allegations. SBS's allegation that the LPGA breached a fiduciary duty by negotiating the renewal of SBS's broadcast rights in bad faith does not concern a contractual obligation and thus is not barred by the economic loss rule.

The LPGA's alleged bad faith negotiation of the renewal of SBS's broadcast rights plausibly establishes a claim for breach of fiduciary duty. The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty; and (2) breach of that duty such that it is the proximate cause of the plaintiff's damages. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). A fiduciary relationship may either be express or implied. *First Nat. Bank and Trust Co. v. Pack*, 789 So. 2d 411, 414 (Fla. 4th DCA 2001). "Express fiduciary relationships are created by contract, such as principal/agent, or can be created by legal proceedings in the case of a guardian/ward." *Id.* An implied fiduciary relationship exists based on the specific factual circumstances surrounding the relationship of parties and exists when "confidence is reposed by one party and a trust accepted by the other." *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994) (quoting *Dale v. Jennings*, 107 So. 175, 179 (Fla. 1925)).

In the present case, an implied fiduciary relationship may be inferred from the alleged facts. SBS maintains that its relationship with the LPGA extends "well beyond television broadcast rights." (Doc. No. 36 ¶ 12.) SBS alleges that over the course of its fifteen-year "partnership" and

"joint venture" with the LPGA, SBS has been instrumental in popularizing golf in South Korea and has been dedicated to promoting golf along with the LPGA, as shown by its substantial "pledge of financial support" in sponsoring the SBS Open at Turtle Bay, an LPGA event, since 2004. (*Id.* ¶¶ 5, 10-12.) In addition, the LPGA has acknowledged its "longstanding relationship" and "partnership" with SBS in correspondence to SBS. (Doc. No. 36-2 at 2.)

The LPGA points out that the Licensing Agreement expressly disclaims the creation of a partnership or joint venture between the LPGA and SBS, thereby implying that the parties dealt at arms-length in negotiating future broadcast rights. (Doc. No. 36-1 at 12.) However, the disclaimer of a partnership in the Licensing Agreement does not preclude the existence of a fiduciary relationship based on the alleged "partnership" between SBS and the LPGA extending "well beyond television broadcast rights" to promote golf in South Korea. (Doc. No. 36 ¶¶ 5, 10-12; Doc. No. 36-2 at 2.) Accepting all of SBS's factual allegations as true for purposes of the instant Motions to Dismiss, SBS has plausibly established an implied fiduciary relationship with the LPGA.

In addition to pleading an implied fiduciary relationship, SBS has sufficiently alleged a breach of fiduciary duty by asserting that the LPGA negotiated the renewal of SBS's broadcast rights in bad faith, causing SBS to suffer substantial damages. (Doc. No. 36 ¶¶ 60, 62.) Therefore, SBS has stated a claim for breach of fiduciary duty based on the LPGA's alleged bad faith negotiation of the renewal of SBS's broadcast rights.[4]

## VI. Counts V and VI: Intentional and Negligent Misrepresentation by the LPGA and IMG

In Counts V and VI, SBS alleges that the LPGA and IMG intentionally and negligently

---

[4] Because one alternative statement of SBS's claim of breach of fiduciary duty is sufficiently pled, the claim should not be dismissed. *See* Fed. R. Civ. P. 8(d)(2).

misrepresented that SBS would be afforded an opportunity to consider the LPGA's final must have number. (Doc. No. 36 at 18-20.) The LPGA and IMG argue that these claims should be dismissed because: (1) promises of future conduct are insufficient to establish a claim for intentional or negligent misrepresentation; (2) the economic loss rule bars the claims; (3) SBS could not have justifiably relied upon any statement made by IMG; and (4) SBS failed to plead the claims with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. No. 55 at 17-19; Doc. No. 60 at 16-25.)

## A. Promises of Future Conduct

"Actionable misrepresentations must ordinarily relate to a past or existing fact." *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1104 (11th Cir. 1983) (citing *Sleight v. Sun and Surf Realty, Inc.*, 410 So. 2d 998, 999 (Fla. 3d DCA 1982)). However, Florida law "treats a promisor's intent as a material existing fact." *Citibank, N.A. v. Data Lease Fin. Corp.*, 828 F.2d 686, 694 n.12 (11th Cir. 1987) (citing *Bissett v. Ply-Gem Indus.*, 533 F.2d 142, 145 (5th Cir. 1976)). Therefore, a plaintiff seeking to recover for misrepresentation of a promise to perform a future act "must show that the promisor either lacked the intention to perform the promise or specifically intended not to perform at the time the representation was made."[5] *Royal Typewriter Co.*, 719 F.2d at 1104 (citing *Bernard Marko & Assocs., Inc. v. Steele*, 230 So. 2d 42, 44 (Fla. 3d DCA 1970)).

---

[5] IMG argues, without citing any authority, that it cannot be held liable for misrepresenting what the LPGA, a third party, would do. (Doc. No. 60 at 18.) To the contrary, "[a]n agent is individually liable to a third person for the agent's tortious conduct," which includes the negligent or intentional misrepresentation of information. *Liberty Surplus Ins. Corp., Inc. v. First Indem. Ins. Servs., Inc.*, --- So. 3d ----, 2010 WL 711712, at *3 (Fla. 4th DCA Mar. 3, 2010).

SBS has sufficiently alleged a misrepresentation of existing fact by asserting that at the time LPGA, through IMG, promised SBS an opportunity to consider the LPGA's final must have number, the LPGA and IMG knew that the statements were false and that the LPGA never intended to honor the promise. (Doc. No. 36 ¶¶ 65, 72); *see* Fed. R. Civ. P. 9(b) (permitting intent and knowledge to be pled generally). Accordingly, SBS's claims of misrepresentation should not be dismissed simply because they relate to a promise of future conduct.

### B. Economic Loss Rule

As discussed *supra* part V, the economic loss rule prevents a plaintiff from seeking tort damages for conduct that is indistinguishable from the acts giving rise to a claim for breach of contract. Thus, a claim for intentional or negligent misrepresentation is not barred by the economic loss rule if the acts constituting the misrepresentation concern the formation of a contract, separate from the acts that breach a contract. *See Indem. Ins. Co. of N. Am.*, 891 So. 2d at 537 ("Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract."); *Pearson v. Ford Motor Co.*, 694 So. 2d 61, 69 (Fla. 1st DCA 1997) ("Because [the plaintiff] alleges fraudulent misrepresentation and negligent misrepresentation in formation of the . . . contract, the economic loss rule does not bar [the] fraud action based on such misrepresentations.").

SBS maintains that at the time of the alleged contract formation, the LPGA and IMG misrepresented the LPGA's intent to afford SBS the right of last option to accept the LPGA's must have number. (Doc. No. 36 ¶¶ 64, 71.) This asserted misrepresentation is distinguishable from the LPGA's alleged failure to afford SBS the right of last option as promised, thereby breaching its contract with SBS. (*Id.* ¶¶ 47, 66, 73.) Because SBS has alleged a misrepresentation concerning

the formation of a contract apart from the breach of that contract, SBS's claims of misrepresentation are not barred by the economic loss rule.

### C. Justifiable Reliance

SBS must plead "justifiable reliance" on the statements made in each of its claims for negligent and intentional misrepresentation, although the standards of justifiable reliance differ for each cause of action. For a claim of intentional misrepresentation, "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had [the recipient] made an investigation, unless [the recipient] knows the representation to be false or its falsity is obvious." *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 336 (Fla. 1997) (quoting *Besett v. Basnett*, 389 So. 2d 995, 998 (Fla. 1980)). A stricter standard applies in the context of negligent misrepresentation, as the recipient is "responsible for investigating information that a reasonable person in the position of the recipient would be expected to investigate." *Id.* at 339.

SBS's factual allegations satisfy both standards. The Court cannot conclude from the alleged facts that the LPGA's representation, through IMG, that SBS would be granted a right of last option was obviously false or known by SBS to be false. In addition, IMG and the LPGA do not cite, and the Court does not find, any authority or evidence in the record that SBS failed to reasonably investigate IMG's assurance that SBS had a right of last option to accept the LPGA's must have number.[6] Accordingly, SBS's claims of fraudulent and negligent misrepresentation should not be

---

[6] IMG cites *O'Neal Homes, Inc. v. City of Orange Beach*, 333 F. App'x 428 (11th Cir. 2009), in which the panel applied Alabama law and found that "[a]ny reliance . . . on a prediction and opinion as to the contents of an ordinance that a legislative body might pass in the future was unreasonable." *Id.* at 431. Assuming without deciding that the same is true under Florida law, such a rule is inapposite to SBS's reliance on the statement of IMG, the LPGA's media agent, pertaining to the negotiation of a broadcast license. (Doc. No. 36 ¶¶ 9, 64.)

dismissed for failure to plead justifiable reliance.

### D. Pleading with Particularity

Claims of negligent and intentional misrepresentation must be plead with particularity pursuant to Federal Rule of Civil Procedure 9(b). *Linville v. Ginn Real Estate Co., LLC*, --- F. Supp. 2d ----, 2010 WL 1063704, at *2 (M.D. Fla. Mar. 10, 2010); *Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-16JRK, 2009 WL 722320, at *2 (M.D. Fla. Mar. 18, 2009). Rule 9(b) is satisfied if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made;
>
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same;
>
> (3) the content of such statements and the manner in which they misled the plaintiff; and
>
> (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

SBS asserts that following the December 2008 meeting with LPGA Commissioner Bivens, SBS received confirmation from Brenda Lee, a representative of IMG "with whom SBS had continued to communicate concerning the renewal issue, that as in the past, SBS would receive an opportunity to consider the LPGA's final must have number as to the amount of the license fee." (Doc. No. 36 ¶ 25.) This assertion provides sufficient notice of the content of the alleged misrepresentation and the time, place, and person responsible for making such statement. SBS further alleges that it relied on Lee's statement in continuing negotiations with the LPGA and that the LPGA failed to provide SBS an opportunity to consider the LPGA's final must have number before awarding exclusive broadcast rights to J-Golf. (*Id.* ¶¶ 25-29, 64-74.) Based on these

allegations, SBS has sufficiently pled the manner in which Lee's statement misled SBS and what

the LPGA obtained as a consequence of the alleged misrepresentation. Therefore, SBS has pled its

claims of intentional and negligent misrepresentation with particularity pursuant to Federal Rule of

Civil Procedure 9(b).

## VII. Counts VII: Breach of Obligation to Deliver 2009 Schedule

SBS alleges that the LPGA breached the Licensing Agreement by failing to deliver a 2009

schedule of events containing a substantially similar quantity and quality of events as provided in

2005. (Doc. No. 36 ¶ 76.) The LPGA challenges the sufficiency of the facts pertaining to this

claim. (Doc. No. 55 at 21-22.)

To state a claim for breach of contract under Ohio law,[7] SBS must plead: (1) the existence

of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages or loss

to the plaintiff. *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994). The LPGA does not

dispute that SBS has pled the existence of a valid contract, performance, or damages. Turning to

the third element, breach of the Licensing Agreement, the LPGA acknowledges that pursuant to the

Licensing Agreement, the "number of events shall be substantially similar during each year of the

Term." (Doc. No. 55 at 21; Doc. No. 36-1 at 2.) SBS plausibly established a breach of this

provision by alleging that the LPGA revised the 2009 schedule to eliminated several events

originally included on the schedule and several events which SBS had broadcast in prior years,

resulting in "a material reduction in the number of [e]vents [that] SBS was entitled to broadcast."

(Doc. No. 36 ¶¶ 35-36.) Therefore, SBS has stated a claim for breach of the LPGA's scheduling

---

[7] The Licensing Agreement is governed by Ohio law. (Doc. No. 36-1 at 13.)

obligation under the Licensing Agreement.[8]

## VIII. Count VIII: Breach of the Confidentiality Provision

SBS asserts that the LPGA breached the confidentiality provision of the Licensing Agreement by knowingly disclosing the financial terms of the Agreement to J-Golf and other third parties. (Doc. No. 36 ¶ 81.) The confidentiality provision of the Licensing Agreement allegedly prohibits the LPGA from divulging to any third party except Trans World International, Inc. any of the financial terms of the Agreement without the other party's express permission, other than as necessary to comply with the law. (Doc. No. 36-1 at 12.) The LPGA argues that this claim is only supported by conclusory allegations. (Doc. No. 55 at 22.) This argument is without merit. SBS has alleged specific facts, including the language of the confidentiality provision and the party to which the LPGA improperly disclosed information. (Doc. No. 36 ¶ 81; Doc. No. 36-1 at 12.) These factual allegations permit the inference that the LPGA breached the confidentiality provision of the Licensing Agreement. Accordingly, SBS's claim for breach the confidentiality provision is well-pled.

## IX. Count IX: Breach of the Exclusivity Provision

SBS alleges that the LPGA breached the exclusivity provision of the Licensing Agreement by extending broadcast rights to third-parties for certain events that were inappropriately excluded from SBS's 2009 broadcast schedule. (Doc. No. 36 ¶ 86; Doc. No. 36-1 at 4.) The LPGA maintains

---

[8] The parties dispute whether the Licensing Agreement affords SBS the right to broadcast the same quality of events from year to year. (Doc. No. 55 at 21-22; Doc. No. 63 at 18.) Finding that one alternative statement of SBS's breach of contract claim is sufficiently pled, the Court need not determine at this time whether the LPGA breached the Licensing Agreement by failing to maintain the same quality of events in SBS's broadcast schedule from year to year. *See* Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

that this claim should be dismissed because SBS does not allege any facts to support the claim. (Doc. No. 55 at 22.)  To the contrary, SBS has attached the Licensing Agreement containing the exclusivity provision to its Amended Complaint and has alleged the manner in which the LPGA breached that provision.  (Doc. No. 36 ¶¶ 86-87; Doc. No. 36-1 at 4.)  Therefore, SBS has sufficiently pled a claim for breach of the exclusivity provision of the Licensing Agreement.

## X.  Count X: Unjust Enrichment

As alternative relief to the corresponding claim for breach of contract, SBS alleges that the LPGA has been unjustly enriched by retaining one-half of the 2009 licensing fee in the amount of $1,125,000 and by failing to deliver SBS's 2009 broadcast schedule as required by the Licensing Agreement. (Doc. No. 36 ¶¶ 89-90.)  The LPGA argues that this claim should be dismissed because a claim for unjust enrichment cannot stand where the relationship between the parties is governed by a valid contract. (Doc. No. 55 at 23-24.)  Because a party may assert alternative and inconsistent claims for relief, SBS may plead both breach of contract and unjust enrichment.  *See Shibata v. Lim*, 133 F. Supp. 2d 1311, 1316-17 (M.D. Fla. 2000) (noting that a party can alternatively allege recovery under an express contract and seek equitable relief under the theory of unjust enrichment).

## XI.  Counts XI - XII: Tortious Inference by IMG

In Count XI, SBS alleges that IMG[9] tortiously interfered with SBS's contractual right of last option by intentionally inducing the LPGA to breach the right of last option and to abandon all negotiations with SBS.  (Doc. No. 36 ¶ 24.)  In Count XII, SBS asserts that IMG tortiously

---

[9] Although the allegations in Count XI solely concern IMG, SBS has demanded judgment against the LPGA.  This is a typographical error in view of all of the allegations in the Amended Complaint.  Accordingly, the Court construes Count XI to request a judgment against IMG, not the LPGA.  *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

interfered with SBS's rights under the exclusivity provision of the Licensing Agreement by inducing the LPGA to extend broadcast rights to third-parties with respect to certain LPGA events. (Doc. No. 36 ¶ 100.) IMG argues that these claims should be dismissed because: (1) an agent cannot tortiously interfere with its principal's contract; (2) the alleged right of last option did not exist; (3) SBS failed to sufficiently plead that the LPGA breached the exclusivity provision of the Licensing Agreement; and (4) the allegations supporting the claims of tortious interference do not satisfy the pleading requirements under *Twombly* and *Iqbal*. (Doc. No. 60 at 7.) As discussed below, each of these arguments is without merit.

First, IMG correctly states that an agent acting within the scope of the agency relationship cannot be held liable for tortious interference with a contract where the principal is a party to the contract. *Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So. 2d 963, 965 (Fla. 4th DCA 2002); *Abruzzo v. Haller*, 603 So. 2d 1338, 1339-40 (Fla. 1st DCA 1992). However, this rule does not bar SBS's claims for tortious interference in Counts XI and XII because SBS alleged that in inducing the LPGA to breach the respective contracts, IMG acted "in its own capacity" and "exclusively for its own financial benefit." (Doc. No. 36 ¶¶ 95, 100.) Therefore, SBS has alleged facts plausibly establishing that IMG acted outside the scope of its agency in interfering with the contracts between SBS and the LPGA.

Second, IMG's assertion that the right of last option did not exist is without merit for the reasons stated *supra* part II. IMG's third argument for dismissing the claims of tortious interference also should be rejected because, as discussed *supra* part IX, SBS sufficiently pled that the LPGA breached the exclusivity provision of the Licensing Agreement.

IMG's final argument for dismissal is without merit because SBS has pled factual allegations

in Counts XI and XII plausibly establishing each element of tortious interference with a contract. *Iqbal*, 129 S. Ct. at 1949. "To maintain a claim for tortious interference with a contract, a plaintiff must show: (1) the existence of a business relationship or contract to which a plaintiff is a party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contractual breach; (4) the absence of justification or privilege; and (5) the plaintiff suffered damages from the breach." *Fernandez v. Haber & Ganguzza, LLP*, 30 So. 3d 644, 646 (Fla. 3d. DCA 2010) (citing *Marquez v. PanAmerican Bank*, 943 So. 2d 284, 286 (Fla. 3d DCA 2006)).

The first element, the existence of a contract, is plausibly established in both Counts XI and XII because the right of last option was sufficiently pled for the reasons stated *supra* part II and because IMG does not challenge the validity of the Licensing Agreement. SBS has pled the second and third elements, IMG's knowledge of the contracts and intentional procurement of breaches, by alleging that IMG intentionally induced the LPGA to breach SBS's right of last option, to breach the Licensing Agreement, and to abandon all negotiations of future broadcast rights with SBS. (Doc. No. 36 ¶¶ 94, 100.) Turning to the fourth element, IMG has not shown the existence of a justification or privilege for its actions at this stage of the proceedings. Finally, SBS has sufficiently pled that it was damaged as a result of IMG's actions. (*Id.* ¶¶ 97, 102.) Therefore, SBS has stated claims for tortious interference in Counts XI and XII.

## XII. Motions to Strike

The LPGA and IMG move to strike the requests for punitive damages in Counts V and VI and the requests for attorneys' fees in Counts I, II, IV, V, VI, X, XI, and XII. (Doc. Nos. 56, 61.) SBS has agreed to withdraw these requests for punitive damages and attorneys' fees without prejudice to reassertion later in this proceeding. (Doc. No. 63 at 3 n.2; Doc. No. 64 at 3 n.3.)

**Conclusion**

Based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** that:

1.    The Motions to Dismiss Amended Complaint by Defendants Ladies Professional Golf Association and IMG Worldwide, Inc. (Doc. Nos. 55, 60) are **DENIED**.

2.    The requests for punitive damages in Counts V and VI and the requests for attorneys' fees in Counts I, II, IV, V, VI, X, XI, and XII are withdrawn without prejudice to reassertion later in the proceedings, if appropriate. The Motions to Strike Demand for Punitive Damages and Attorneys' Fees by Defendants Ladies Professional Golf Association and IMG Worldwide, Inc. (Doc. Nos. 56, 61) are **DENIED as moot**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on May 21, 2010.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record